DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Vinton County Common Pleas Court, Juvenile Division, judgment that awarded the Vinton County Department of Job and Family Services (JFS) permanent custody of Aaron Workman (date of birth November 2, 1995), Teddy Workman, Jr. (date of birth September 24, 1992), and Daniel Workman (date of birth January 17, 1994).[1]
 {¶ 2} Appellant, Teddy Workman, Sr., the natural father of the children, assigns the following error for review:
"The trial court erred in finding that it was in the best interest of the minor children of Teddy Workman Sr. that permanent custody be granted."
 {¶ 3} Our review of the record reveals the following facts pertinent to the instant appeal. On February 17, 2000, JFS caseworker M. Christine DeAloia filed complaints alleging Teddy, Jr., and Daniel to be neglected and dependent children. On the same date, JFS filed a complaint alleging Aaron to be a dependent child. The complaints alleged that as of February 10, 2000, Teddy, Jr. and Daniel had missed a substantial amount of school due to lice.[2] For example, since August of 1999: (1) Teddy missed thirty-four days of school; and (2) Daniel missed sixty-three days of school. The complaint alleged that the children had been repeatedly sent home from school because of lice, despite JFS having provided lice treatment on six different occasions since October of 1999.
 {¶ 4} On May 1, 2000, the trial court conducted an adjudicatory and a dispositional hearing. Appellant did not appear at the hearings. The mother admitted that all three children are dependent[3] and agreed to place the children in JFS's temporary custody. JFS had developed a case plan with a goal of reunifying the children with the mother. On June 29, 2000, the three children were reunited with the mother, subject to JFS's protective supervision.
 {¶ 5} On January 31, 2001, JFS filed a motion to modify the disposition to temporary custody. JFS alleged that: (1) the children were living in a violent household; (2) while in the children's presence, the mother threatened to kill appellant; (3) the mother smashed appellant's car windows; (4) the home was infested with roaches and Aaron had to go to the hospital to have a cockroach removed from his ear; (5) the children had poor school attendance; and (6) the mother stated that she could not care for children. On January 31, 2001, the trial court granted the motion.
 {¶ 6} On February 5, 2001, the trial court held a hearing regarding JFS's request for temporary custody. At the hearing, the mother agreed to placing the children in JFS's temporary custody. JFS developed another case plan with a goal of reunifying the children with the mother.
 {¶ 7} In May of 2001, appellant entered an appearance in the case. He requested, and was appointed, counsel. He then filed motions for a home study, for visitation, and for custody of the children.
 {¶ 8} On March 12, 2002, JFS filed motions to seek permanent custody of all three children. JFS alleged that the children had been in its temporary custody for twelve or more of the prior twenty-two months.
 {¶ 9} On July 16, 2002, the guardian ad litem filed her report and noted that shortly after the children's initial removal from appellant's home, the children's condition rapidly improved. For example, Teddy, Jr.'s teacher noted that he appeared clean and healthy and that his recurring sinus infection had improved. All of the children's basic skills had improved. The guardian ad litem further reported that after the children visited appellant, the foster parents noticed a deterioration in the children's behavior. The guardian ad litem concluded that neither appellant nor the children's mother are able to properly parent the children or to appropriately care for the children's basic needs. She stated that appellant and the children's mother have neglected the children's medical, educational, and developmental needs. She concluded that granting JFS permanent custody would serve the children's best interest by providing them with a stable, loving home "with nurturing capable adults who will care for them."
 {¶ 10} On July 22, 2002, and continuing on July 24, 2002, the trial court held a hearing to consider the permanent custody motions. At the hearing, evidence was adduced to show that appellant and the children's mother are not married and never have been married. They lived together with their three children for a period of time, but in January of 2001, appellant moved from the home and left the mother to care for the three children. Several months after appellant left the children's mother, the mother began living with Ricky Friend. Shortly thereafter, appellant began living with Mary Ann Friend, Ricky's wife.
 {¶ 11} At the time of the hearing, the mother lived in a two-bedroom house trailer with her twenty-one year old nephew and a friend named Kevin Halterman. She was not employed and has never held a permanent job. Neither her nephew nor Halterman has a permanent source of income. The mother explained that she is trying to receive disability assistance for her asthma and emphysema.
 {¶ 12} While the children were in JFS's custody, the mother visited with the children twice per month. The mother stated that she does not want JFS to be granted permanent custody of the children. She thinks that the children should live with either her or their father.
 {¶ 13} At the time of the hearing, appellant lived in a four bedroom home with Mary Ann Friend, appellant's three daughters that he had with another woman, and Mary Ann's daughter. He stated that he does not currently work and he receives "SSI."
 {¶ 14} Appellant testified that he does not believe JFS should be granted permanent custody of the children. He stated that his home has plenty of room for the three boys. He explained that he bought new furniture for the boys, including bunk beds and dressers. Appellant admitted, however, that he has a prior sexual imposition conviction but denied that he was guilty of the charges. He stated that he pled guilty just to have the matter resolved.
 {¶ 15} Caseworker DeAloia testified that on January 31, 2001, the children were taken into JFS's custody because the mother did not have any income, the "home was overrun with cockroaches," and the mother could not feed or care for children. She stated that: (1) the home contained little food for the children to eat and that as of January 31, 2001, appellant was no longer living at the home; (2) the mother was behind on rent and she was emotionally unstable; (3) the mother had taken the children to their maternal grandmother, but the grandmother could not care for them; and (4) on one occasion, the mother sent the children to the grandmother's home wearing sandals when there was snow on the ground. DeAloia stated that the case plan addressed three basic goals: (1) to secure the children's basic needs by providing sufficient income, by ensuring that the children attend school, and by ridding the home of lice and roaches; (2) to provide a stable home life by controlling the children's unruly behavior and by providing effective parenting skills; and (3) to provide adequate supervision of the children.
 {¶ 16} With respect to the children's father, DeAloia stated that she did an unannounced visit to his home during an eight-hour Saturday visit. She testified that the children had tools and were destroying a car that their father told them they could destroy. DeAloia stated that she believed allowing the children to use tools to destroy a car was dangerous and taught the children that destructive behavior was acceptable.
 {¶ 17} She further stated that she heard that appellant had given Teddy, Jr. a knife and that Teddy, Jr. then threatened to stab a student. She testified that she heard Teddy, Jr. threatened students so many times that he was suspended. DeAloia stated that she spoke to appellant about giving Teddy, Jr. a knife, but a few months later, he purchased pocket knives for the children.
 {¶ 18} DeAloia testified that the children have "pretty severe behavior problems" that appellant does not seem to understand. She related her belief that appellant "minimizes" the children's behavior problems because he does not understand them. She explained that after Aaron and Teddy, Jr. were diagnosed with attention deficit hyperactivity disorder, appellant stated that "he wanted them [to] be their selves [sic]" and he did not think they should take medication.
 {¶ 19} DeAloia stated that after the children visited with their father, the foster parents noticed changes in the children's behavior, such as being aggressive at school and wetting the bed. She further stated that Aaron had some sexual acting out after visits with appellant.
 {¶ 20} DeAloia opined that appellant is not capable of handling all three children. She explained that the children need intensive supervision. DeAloia testified that if the children were placed with appellant, the children would need intensive monitoring, meaning having someone in the home everyday to supervise. DeAloia stated that although appellant appeared to be bonded with the children, he did not attend all of the scheduled visits. She further noted that Aaron has stated that he does not want to visit with his father.
 {¶ 21} Dr. Kenneth Murray of Scioto Paint Valley Mental Health Center testified that he provided services to the three children and to appellant. He stated that all three children "have significant behavior problems and they would be difficult to deal with in a specialized foster home or residential center or anywhere you're going to have problems." He stated that "specifically trained professionals would have difficulties with these boys."
 {¶ 22} Dr. Murray stated that Aaron's behavioral problems included: (1) lying: (2) being aggressive; (3) being destructive; (4) having poor school behavior; and (5) being defiant. Dr. Murray testified that Aaron seemed to have more trouble before and after visiting with his father. Dr. Murray testified that Aaron seems bonded with his foster family and has not expressed whether he would like to live with his father.
 {¶ 23} Dr. Murray also stated that Daniel's behavior problems included: (1) lying; (2) being destructive; (3) having poor school behavior; (4) having poor school attendance; and (5) being disobedient at home. Dr. Murray testified that Daniel would like to live with his father.
 {¶ 24} Dr. Murray further stated that Teddy, Jr.'s behavior problems included: (1) temper tantrums; (2) being defiant; (3) lying; (4) being aggressive; (5) being destructive; (6) having poor school behavior; and (7) difficulty concentrating and paying attention. Dr. Murray testified that Teddy, Jr. has bonded with his foster family and that he once stated that he did not want to return to his father.
 {¶ 25} Dr. Murray opined that appellant cannot adequately parent the children. Because all three children need highly structured environments in order to have future success, Dr. Murray related his belief that appellant does not have the ability to handle the children's special needs. He stated that appellant's "primary obstacle [regarding parenting] is his own limited intellectual ability."
 {¶ 26} On October 23, 2002, the trial court granted JFS permanent custody of the three children. The trial court first determined that the children had been in JFS's temporary custody for more than twelve of the prior twenty-two months. The court then considered whether the children's best interests would be served by granting JFS permanent custody.
 {¶ 27} With respect to the children's interaction and interrelationship with the children's parents, siblings, relatives, and foster care givers, the trial court found that: (1) the children are bonded with both appellant and the foster care parents, but are not bonded with the mother; (2) Daniel and Aaron live in the same foster home and are bonded; (3) all three children visit with each other and enjoy being together; and (4) the children "have some relationship with Mary Ann Friend, her daughter and [appellant's] three daughters."
 {¶ 28} The trial court found the following regarding the children's wishes: (1) Aaron has been "nonverbal" in expressing who he wants to live with, but is bonded with his foster parents; (2) Teddy Jr. once expressed a desire to live with his father and is bonded with his foster parents; and (3) the trial court was not aware whether Daniel has expressed any interest in who he would like to live with, but he is bonded with his foster parents.
 {¶ 29} With respect to the children's custodial history, the trial court found the following: (1) the children have been in JFS's temporary custody from January 31, 2001 through the date of permanent custody hearing, July 22, 2002, for a total of seventeen months; and (2) before January 31, 2001, all three children were in JFS's temporary custody from May 1, 2000 to July 2000.
 {¶ 30} The trial court further noted the following with respect to appellant's involvement in the children's lives: (1) on February 23, 2000, appellant was served with the original complaints; (2) the court advised appellant numerous times of his right to attorney; (3) appellant took no action-he did not attend the adjudicatory hearing and he did not respond to the case plan amendments; (4) on May 9, 2001, appellant requested and was granted counsel; (5) on July 11, 2001, appellant requested visitation and custody; and (6) appellant initially decided not to participate in the court proceedings because he wanted to give the mother an opportunity to be reunified with the children.
 {¶ 31} The trial court found the following with respect to the children's need for a legally secure permanent placement: (1) Daniel is a special needs child, is a hard child to place, and requires placement in a therapeutic foster home; (2) Aaron is a special needs child, is a hard to place child, and should be in a therapeutic foster home; (3) Teddy, Jr. is special needs child, is a hard to place child, and should be in therapeutic foster home; (4) all three children must be in a highly structured environment; (5) all three children need appropriate medical protocol; (6) all three children need continued specialist counseling; and (7) to successfully reunify the children with either appellant or the mother would require close supervision and monitoring. The court expressed its concern that appellant would not be able to provide the close supervision and monitoring that the children need, in light of appellant's living situation with his three daughters and his paramour's daughter.
 {¶ 32} The court noted that appellant is bonded with his three children, loves his children, and has been sincere in his desire to gain custody. The court further found, however, that appellant minimizes the children's special needs. The court additionally noted that appellant waited approximately seventeen months to become involved in the case or to otherwise help the three children. The court concluded that considering the "special needs of the boys, including the need for a highly structured environment, close monitoring, continued individual counseling, continued family counseling, and continued need for consistent medical protocol," appellant would not be likely to provide the consistency that the children need.
 {¶ 33} The court noted that the mother has had at least four different residences, several of which have been unsuitable, and is not employed. The court found that the mother's current living arrangement does not provide the needed living situation for the children and that she cannot provide a legally secure placement for children.
 {¶ 34} The court then considered whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) applied. The court noted that on March 21, 2000, appellant pleaded guilty to R.C. 2907.06(A)(1), but that the offense did not involve a child.
 {¶ 35} Based on the foregoing, the trial court concluded that the children's best interests would be served by granting JFS permanent custody. Appellant filed a timely notice of appeal.
 {¶ 36} In his sole assignment of error, appellant asserts that the trial court erred by determining that the best interests of the children would be served by awarding JFS permanent custody. Appellant argues that the record does not contain clear and convincing evidence to support the trial court's decision. We disagree with appellant.
 {¶ 37} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. Santosky v. Kramer (1982),455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599; In re Murray (1990),52 Ohio St.3d 155, 156, 556 N.E.2d 1169, 1171. The parent's rights, however, are not absolute. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'"In re Cunningham (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (quotingIn re R.J.C. (Fla.App. 1974), 300 So.2d 54, 58). Thus, the state may terminate parental rights when the child's best interest demands such termination.
 {¶ 38} R.C. 2151.413 permits a public children services agency that has temporary custody of a child to file a motion requesting permanent custody of the child. In considering a motion filed pursuant to R.C. 2151.413, the trial court must follow the guidelines set forth in R.C. 2151.414. R.C. 2151.414(A)(1) requires the trial court to hold a hearing regarding the motion for permanent custody. The primary purpose of the hearing is to allow the trial court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1).
 {¶ 39} The decision that the child is an abused, neglected, or dependent child may not be re-adjudicated at the hearing. See id. Once a child is adjudicated dependent as defined in R.C. 2151.04, the best interests of the child become the trial court's primary concern when determining whether granting permanent custody is justified. Cunningham, supra.
 {¶ 40} When court's review a permanent custody motion, a trial court should consider the underlying principles of R.C. Chapter 2151:
(A) To provide for the care, protection, and mental and physical development of children * * *;
"* * *
(B) To achieve the foregoing purpose, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.
R.C. 2151.01.
 {¶ 41} We note that clear and convincing evidence must exist to support a permanent custody award. The Ohio Supreme Court has defined "clear and convincing evidence" as follows:
"The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23,26; see, also, State v. Schiebel (1990), 55 Ohio St.3d 71, 74,564 N.E.2d 54, 60. In reviewing whether a trial court's decision is based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel,55 Ohio St.3d at 74, 564 N.E.2d at 60. If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Id.
 {¶ 42} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273, 1276:
"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
 {¶ 43} R.C. 2151.414(B) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that one of the following conditions applies:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 44} Pursuant to the plain language of R.C. 2151.414(B)(1)(d), when a child has been in a children services agency's temporary custody for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. See In re Billingsley, Putnam App. Nos. 12-02-07 and 12-02-08, 2003-Ohio-344; In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205; In re Dyal, (Aug. 9, 2001), Hocking App. No. 01CA11; Inre Decker (Feb. 13, 2001), Athens App. No. 00 CA 42, unreported; In reFox (Sept. 27, 2000), Wayne App. Nos. 00 CA 38, 00 CA 39, 00 CA 40, 00 CA 41, unreported; In re Moody (Aug. 7, 2000), Athens App. No. 99 CA 63, unreported; In re Moody (Aug. 7, 2000), Athens App. No. 99 CA 62, unreported.[4] See, generally, In re Lusk (Nov. 27, 2000), Butler App. No. CA2000-07-139, unreported; In re Barker (June 16, 2000), Champaign App. No. 20001, unreported; In re Rodgers (June 5, 2000), Preble App. No. CA99-08-017, unreported. Thus, when considering a permanent custody motion brought pursuant to R.C. 2151.414(B)(1)(d), the only other consideration becomes the best interests of the child. A trial court need not conduct an R.C. 2151.414(B)(1)(a) analysis of whether the child cannot or should not be placed with either parent within a reasonable time. Dyal, supra.
 {¶ 45} R.C. 2151.414(D) requires the trial court to consider specific factors in determining whether the child's best interests would be served by granting the motion for permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[5]
 {¶ 46} In the case at bar, we find ample competent and credible evidence to support the trial court's decision to award JFS permanent custody of the three children. The evidence reveals that, as of the date of the permanent custody hearing, the children had been in JFS's temporary custody for at least twelve of the prior twenty-two months. See R.C. 2151.414(B)(1)(d). The children were removed from the home on January 31, 2001. For purposes of R.C. 2151.414(B)(1)(d), a child is considered to enter "the temporary custody of an agency on the earlier of the date the child is adjudicated [dependent] * * * or the date that is sixty days after the removal of the child from the home." R.C.2151.414(B)(1). The children were adjudicated dependent on May 1, 2001. Because April 1, 2001 (sixty days after the children were removed from the home) is earlier than the date the children were adjudicated dependent, the children had thus been, at the time of the permanent custody hearing, in JFS's temporary custody, for purposes of R.C.2151.414(B)(1)(d), for approximately fifteen months. Because the children had been in JFS's temporary custody for at least twelve months of a twenty-two month period, the trial court's permanent custody award is justified upon a finding that permanent custody would serve the children's best interests.
 {¶ 47} We believe that the record contains ample competent and credible evidence to support the trial court's conclusion that the best interests of the children would be served by awarding JFS permanent custody. We note that the trial court rendered a detailed ninety-four page opinion that outlined the evidence and contained its findings with respect to each of the best interest factors. After our review of the trial court's lengthy recitation of the evidence, the transcript, and the trial court's application of the facts to the best interest factors, we believe that substantial competent and credible evidence supports the trial court's conclusion that the best interest of the children would be served by awarding JFS permanent custody.
 {¶ 48} The evidence reveals that the children have special needs with behavior problems that require a highly structured environment with close supervision. The trial court found that the children's best interests and future success depends on close monitoring, continued family counseling, a highly structured environment, and continued medical care. The trial court found that the father minimizes the children's problems and that his living arrangement with three daughters, a step-daughter, and a paramour hampers his ability to provide his other three children with a highly structured, closely monitored environment. While we agree with the trial court's finding that appellant no doubt loves his children and sincerely desires to have custody of the children, we nevertheless conclude that the trial court appropriately decided that the best interest of the children requires that JFS be awarded permanent custody. The children have been involved with JFS since 1999. The children deserve a stable environment in which they can flourish and have a structured family life.
 {¶ 49} Consequently, we agree with the trial court's decision to award JFS permanent custody of the three children. Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Vinton County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, J. Evans, P.J.: Concur in Judgment Opinion.
[1] We note that appellee asserts in its appellate brief that two of the children's names, Aaron and Daniel, have been misspelled throughout the majority of the trial court proceedings. Appellee states that the correct spellings are Arron and Danial. We will nevertheless use the spellings as they appear on the initial complaint filed in the trial court (Aaron and Daniel).
[2] At the time that JFS filed the motions, Aaron was four-years old and was not attending a public school.
[3] JFS dismissed the neglect allegations.
[4] In Moody, we noted as follows:
"On March 18, 1999, Am.Sub.H.B. No. 484 (HB 484) became effective and amended R.C. 2151.414. Prior to this amendment, a trial court could grant permanent custody of a child who had not been abandoned or orphaned only if doing so was in the best interest of the child and the trial court found that the child could not be placed with the parent within a reasonable time or should not be placed with the parent. After HB 484's amendments, a trial court may grant permanent custody of a child who has not been abandoned or orphaned to an agency if doing so is in the best interest of the child and the child has been in the temporary custody of one or more public children services agencies for at least twelve months of a twenty-two month period ending on or after March 18, 1999. See R.C.2151.414(B)(1)(d). If the child has not been in the agency's custody for the requisite period of time (and has not been abandoned or orphaned), the trial court may grant permanent custody to the agency only if the child could not be placed with the parent within a reasonable time or should not be placed with the parent. R.C. 2151.414(B)(1)(a). Thus, the trial court is required to determine whether the child could not be placed with the parent within a reasonable time or should not be placed with the parent only if the child is not abandoned, orphaned, or has not been in the temporary custody of one or more public children services agencies for at least twelve months of a twenty-two month period ending on or after March 18, 1999. R.C. 2151.414(B)(1); R.C. 2151.414(B)(2)."
[5] R.C. 2151.414(E)(7) to (11) provide as follows:
(7) The parent has been convicted of or pleaded guilty to one of the following:
(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 [2151.41.2] of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
(10) The parent has abandoned the child.
(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [ 2151.41.5] of the Revised Code with respect to a sibling of the child.